Consulate of the State of Kuwait, and Canonis Corrado v. Garland have been submitted on the briefs. The first case on calendar for argument is United States v. Fower. Counsel for appellant, please proceed. Good morning, Your Honors. I would like to reserve three minutes for rebuttal. All right. Counsel, please be advised that the time showing is your total time remaining. Thank you, Your Honor. May it please the court, the district court erred in denying Mr. Fower's motion for compassionate release. I note from the outset that the court ought to be deeply troubled by the BOP's actions or inactions. Mr. Fower, through counsel, contacted the warden, the regional director, and the BOP general counsel. They all ignored his compassionate release request, as did the sentence computation people down in Grand Prix, Texas. Now, the government, in its answering briefs, surmises that BOP did not have enough information to make an informed decision. That's simply speculation. Now, my first argument, Your Honors, is... Mr. Barria, let me pose the first question to you. I'm curious. Had he been designated to a particular facility before he made the application, or was it sort of a blunderbuss approach where he just, you know, wrote to many facilities? No, Your Honor. He had been designated to a facility, and we contacted the warden at that specific facility. Counsel, did the warden for that facility have the ability to grant a compassionate release without going through the administrative process? Your Honor, under 18 U.S.C. 3582, the compassionate release, the relief must come from the director of the BOP, not from the warden. So, I imagine the warden would have had to go through a chain of command and to recommend or instruct. And I suppose, given that the director's higher level, he would have had to recommend to the director that a compassionate release motion be filed with the court. But that was never done as far as we're aware. But he wasn't in custody, right? He was not, Your Honor. But we say that, again, 18 U.S.C. 3582C does not have an in-custody requirement. Congress chose the words upon motion of the defendant. They did not choose the words inmate. They did not choose the words prisoner. And so, we say there is simply no in-custody requirement, and that the court is bound by the statute's plain wording. Counsel, do you have a case that you can cite to us that interprets the statute in the way you are advocating for us to interpret it? Your Honor, in my opening brief, I listed three cases, two from Illinois, I believe the Northern District, and one from the District of Puerto Rico, where courts did grant pre-surrender compassionate relief requests. Those were all district courts. I do not have any appellate authority. It seems like you're just asking us. Go ahead, Judge Block. I'm sorry. Go ahead. I was going to say that Judge Breyer in Hussain seemed to interpret the statute the way you would want us to interpret it as well. And I quote, he said that the statute requires the defendant to exhaust his administrative rights before moving for relief. It does not expressly require a defendant to exhaust those rights while in custody, just quoting his language. And so, I'm a little bit troubled by that. And you also referred to those Illinois cases as well. I'm going to ask the government a few questions about that. But I am concerned about your position because it seems to be that you're saying that somebody has to serve any jail time whatsoever, and that troubles me a bit. As Your Honor is aware, oftentimes a sentencing judge will not immediately remand the defendant. Right, not an inmate. A defendant may be out on bail for a number of months after sentencing. And all sorts of things could happen. He could be hit by a car. He could have a heart attack. You know, there could be a drastic change. Or in this case, we have a global pandemic and someone like Mr. Fowler who has a serious health condition. And so, it may be that given extraordinary circumstances, Your Honor. Well, but it seems to me that you're advocating a system where, okay, they don't have to be in custody so then they can file everything in the district court. Which, if they were in custody, then they would have to exhaust within the prison system. And the prison system could let them out. So, you're asking us to just open the floodgates and say, okay, you don't have to go to jail. Just make an appointment with the district court. Come in. Forgive me for not exhausting my administrative remedies. And then just give me relief or modify my sentence. Respectfully, Your Honor, that is not at all what I am saying. What I am saying is... Well, isn't that the result of the rule that you want? Won't all the district courts have everyone standing in line before they report to jail? And then the district courts are all going to have to be the determinative factor about whether someone should be released or not. And read all the medical reports and all of that. Whereas that could vary if they're in custody and the prisons... Because the prisons will let some people out or make that recommendation. And, you know, you'd just rather take your chances with the district court. It just seems like your guy just doesn't want to go to jail. Your Honor, I respectfully disagree. What I am saying is we go to the warden as we did. And if the warden provided a cogent, well-reasoned response... And, you know, let's say hypothetically he said, don't worry. We have ample medical care. We have ample social distancing. We have all these precautions in place. Then it's very likely we would have said, look, Mr. Fauer, you know, your concerns are unfounded. They'll take good care of you. So I'm absolutely not suggesting we bypass the warden or BOP. I'm saying we exhaust it. And hopefully in future cases, prodded by the court's decision, we'll encourage wardens and BOP to provide a thorough response. And that may dissuade a number of inmates. While you're not in custody, though? You want to do it while you're not in custody, right? Exactly, Your Honor. And the warden's very well-situated to be able to address concerns and say, hey, these are legitimate. Or, no, this is completely frivolous, you know. Let me interrupt you here. I'm trying to get a practical handle on this. I've been graced by being given the opportunity to sit as an active circuit court judge, even though I'm a lowly district court judge from Brooklyn. But I manage my sentences by extending the time for people to... Oh, I think he froze. Let's pause for a moment. That's not a viable thing here. Just go to the district court judge. Can you extend my time to surrender? And perhaps ethical matters could work out best that way. Your Honor, you cut off partway through. But I do think I understood and heard enough to answer the question. I definitely think extending is a possibility. But this is a clout that would hang over the inmate. So let's say we extended Mr. Fadwar for two, three years till Delta passed, Omicron passed, and whoever knows what else passes. That's hanging over him. He cannot get on with his life. So I do think in the right circumstance that compassionate relief may appropriately be granted pre-surrender. Counsel, would you agree that the regulations that address compassionate leave use the term inmate? The regulations may, Your Honor, but the... Counsel, if they do use the word inmate, does that then weaken your argument regarding the interpretation of the statute if the agency has interpreted it as inmate? I would have to agree with you, Your Honor. I think it would be quite a broad expansion to say that inmate equals defendant. Right, okay. And, Your Honors, if I may reserve my last minute 15 seconds for rebuttal. All right. Thank you. We'll hear from the government. Thank you, Your Honors. Good morning. May it please the Court, Daniel Lin for the government. I'd like to start off by clarifying just one point based on the discussion that Your Honors had with Mr. DeMaria. So it is the case that the defendant did send a letter to a warden, but I'd like to point out that that was the warden of a different facility than the one that the defendant is currently at now. I believe that he was initially designated to FCI Hurlong, but after multiple continuances, his self-surrender was to USP Lompoc. But, Counsel... And this speaks to... Yes, Your Honor. Did he send the letter to the warden of the institution that he was designated for at the time? I believe he did, Your Honor. Okay. But I would note that under 3582C1A, the specific language notes the warden of the defendant's facility. Now, logically, there is no facility that the defendant is in unless the defendant actually is housed in the facility. And if Congress intended for the mere designation to be sufficient to pinpoint the exact warden who is to receive the compassionate release motion, then it would create all kinds of, I suppose, logistical problems as it did here. The warden of FCI Hurlong has no idea who the defendant is, has no information on the defendant, as any warden of any DOP facility would, because the defendant has not self-surrendered. Notably, in the statute, Congress required, despite broadening the exception under 3582C1A for compassionate release motions, that DOP be the initial and informed reviewer and assessor of all sentence reduction motions. It did not suddenly render that role pro forma by allowing non-custodial defendants to... Can you point us to the language in 18 U.S.C. section 3582C1A that requires the defendant to exhaust his administrative remedies while in custody? Can you point? Yes, Your Honor. So, there are two parts to the statute that I believe point to that result or that interpretation. One, it does note that the BOP director or the warden of the defendant's facility is the first entity, first person, the BOP generally, the first reviewer of these sentence reduction motions. Now, as we've stated and as it is clear, the BOP has no information on a defendant that has not self-surrendered. So, for Congress to impose this impossible task on BOP, that is, to determine in the first instance whether the defendant is eligible for compassionate release when it knows nothing about the defendant, would not make any sense. But to be more specific, it does... May I interrupt, please? Yes, Your Honor. I guess you're saying that Judge Brawley was incorrect in his statement that he made in the Hussein case. You don't agree with him, I assume, right? Your Honor, I would... Without knowing too much more about the context of the statement that he said, I would note to the extent that he said, under 3582C1A... The statute, he says, does not require a defendant to exhaust his administrative... He says. Do you agree or disagree with that? Your Honor, I think under the statute, you need to be... And I apologize, it may be on my end, but I... Now, there's a little break up here. Let's stop the clock for a second. It's working on my end, it's just not... I have some problems. But it is keeping time online. The correct time. Well, I know, but what they're talking about is breaking up. Yeah, it's not... Can you hear me now, perhaps? I can hear you well now. Right. Now, the question I pose is whether you agree with Justice Breyer... Judge Breyer, not Justice Breyer, that he expressly states that the statute does not require a defendant to exhaust those rights while in custody. I'm quoting exactly, and I'm a little bit concerned about that. Well, Your Honor, if I may take a step back here, and I'll answer that question after I discuss kind of the statute generally here. For the first 30 years of the statute, only the BOP director could bring a motion. And the BOP director could not bring a motion on behalf of someone not in its custody. What the First Step Act did was broaden this exception to the general rule that once a sentence is imposed, it cannot be altered. But it did not... Justice Breyer is not correct. Okay. Now, I'm also concerned as a practical matter about these Northern District, Illinois cases. There's one called Tanopka, and it's an interesting factual dynamic. A 75-year-old person, since the six months, there's cancer, and then he has problems in the jail. There's a lot of COVID there. And the judge there did grant a relief. And I just wonder whether you agree with that decision. To the extent... So, no, Your Honor, is the answer to that question. And the reason is the following. That case and these district court cases, I can see there are a few district court cases that go the other way here. But notably, most, if not all, of those cases predate this court's decision in Keller. And in Keller, this court made very clear that the exhaustion requirement creates an orderly system by which prison administrators, in the first instance, need to review and assess these compassionate release motions. As opposed to incentivizing line jumping by defendants, like in this case, who serve no time at all, on whom the DOP has no information. And, again, it cuts in front of the individuals in custody who may have more urgent requests. So, this court's decision... There is a minority state of cases that seem to cut the other way. But your position is the Ninth Circuit has spoken all about this already. And we should not follow those Northern District cases or Judge Breyer's case, right? That's correct, Your Honor. And, again, I apologize. Not knowing more about Judge Breyer's case, again, to the extent that it speaks on this exact statute, at this time, after the First Step Act, slightly broadened the exception. I would note, to the extent that he stated, or there is an opinion out there that states that you have to be... You don't have to be an inmate to exhaust these remedies. If I could provide a little bit more nuance on that. Yes, generally speaking, you have to be an inmate. But it's possible that you can be in DOP custody and not be an inmate. For example, when you are in an RRC, a Residential Reentry Center, you're not colloquially, at least, referred to as an inmate. But you may still file a compassionate release motion as you are in DOP custody because the DOP has information on you. It knows your general criminal history, the offense characteristics, any record of discipline while incarcerated or in its custody, whether you're detained or disaffected. Excuse me. I'm sorry. Just one more question. I take it as a practical matter. You would agree that somebody who is in custody for one day can make the application? Correct. Yes, Your Honor. Counsel? Yes. Is this case moot at this point? To some extent, Your Honor. To the extent that the defendant has not even filed a compassionate release motion with the current warden of his facility, as the statute requires, we don't believe he exhausted his administrative remedies. We don't believe that the mere designation one minute after sentencing provides you enough information as to where you're actually going to end up. And so for those reasons, we don't think the defendant exhausted his administrative remedies. To the extent that Your Honor is asking whether it's moot because the 3553 factor analysis is dispositive, I would agree with that. I was thinking that the complaint that was filed sought relief before he ever entered into custody. And so that set of circumstances no longer exists. So that's why I was asking, is this case even moot? Is this case even still alive based on the relief that was sought at the time? Your Honor, I think that's one way to look at it. I took it, I suppose, as the defendant is asking for a complete nullification of his sentence, his 24-month below guideline sentence. To the extent that he is still serving that sentence or subject to serve any portion of that sentence, it is contrary to what he's asking for. It's contrary to the relief he seeks. Well, isn't the defendant asking for a rule that says you don't have to be in custody when you make this request? So that is not that capable of repetition with other people? Or is that issue moot? Well, I suppose to the extent that, you know, through the passage of time, he is in custody. And if I'm understanding correctly, it is the case, well, you know, he made this motion while he prior to self-surrendering that now he is in custody. But I do think generally speaking, to the extent that he filed this compassionate release motion and is asking for a reduction or a complete nullification of his sentence. There is some analysis and consideration to be had here. Mr. Len, I assume we conduct that issue and choose to do that completely because the judge in the alternative did assess the 3553A factors. And I guess that the exercise of discretion is something we cannot overturn. Do you think that's what we should do here? Your Honor, I do think that's correct. I think there was no abuse of discretion in the judge's analysis of the 3553A factors. The Supreme Court in Chavez Mesa set a very low threshold. In fact, there was a standard form that that judge just certified saying that I analyzed 3553A factors and the court found that to be sufficient. Here, the judge went above and beyond that. I see I'm out of time, but if I may more fully answer this question. Yes. But I believe this court can, under the statute, under this court's analysis in Keller, under the purpose and structure of this statute, find very clearly that a defendant must be in the DOP's custody. It's not the case that every now and then the DOP doesn't know something about someone in his custody. It is the case that it doesn't know anything about the relevant factors that it is required to know in making that compassionate release determination in the first instance. It doesn't have any of that information. Congress knew that. Congress gave DOP the plenary authority over placement and housing of individuals, and it knew that mere designation was not enough when it stated that you need to write a letter or request to the warden of the defendant's facility. Well, he did write the letter to the warden of the facility, so I don't think that argument gets you very far. But what I wanted to ask you is what is your best case to support the proposition that custody is required before a motion can be made for a compassionate release? What's your best case? It would be this court's decision in Keller, Your Honor. Keller? Yes, Your Honor. It's U.S.C. Keller, the 953 case in U.S.C. Keller, and the reason is the following. While that case was about the mandatory claim processing rule that the exhaustion requirement amounts to, it also discussed the importance and primary role of BOP in being the first reviewer for a compassionate release motion. But that can be done even when the person is not in custody, so I'm not sure that that is authoritative for the proposition that the person must be in custody. But the BOP can't, Your Honor. Respectfully, the BOP cannot make that determination unless the defendant is in its custody, as was the case here, as is the case with any defendant who is not in the BOP's custody. All right. Under its own program statement, 5050.50, I believe this court referred to before, not only does it refer to the defendant as an inmate throughout its program statement, but it is required, it's required to assess relevant factors, including things that it knows nothing about. I think that's your better argument that the regulations refer to inmate as opposed to the Keller case, but thank you for your argument. Are there any other questions from the panel? I take it that we would be the first circuit court to make this announcement if we were to go in the direction that you suggest we do, correct? That's my understanding, Your Honor, yes. All right. Rebuttal. Your Honor. Counsel, I have a question that I didn't. Is it your view that the district court's failure to provide Mr. Fowler with an opportunity to file a reply brief is reversible error? Your Honor, in and of itself, no. This court has held you don't have the opportunity to file a reply brief. I don't think the district court can dispense with that, but in this case, the entire order was so peculiar in terms of the court saying it didn't. Can you just answer my question, yes or no? Is it your position that was reversible error? And what's your best, what's your authority for that proposition? Your Honor, in and of itself, it is not reversible error, and this court has previously held that, that there is no right to file a reply brief. Okay. Thank you. All right. Counsel, please proceed. Your Honor, thank you, Your Honor. The government made many assumptions about how BOP does not have information on an individual before they show up. That is not in the record. I don't know if that is correct. I don't know at which point the government, or not the government, pardon me, BOP or the warden gets the PSR, but also in a COVID-type situation, the warden may very well be aware of no possibility for social distancing, inadequate medical care, which society as a whole struggles with, not just BOP. And so this argument that the warden does not have enough information, I think this court does not have enough information. This issue is not moved either as to Mr. Fauer or to, it's certainly capable of coming up repeatedly, especially with a pandemic. And I think this court should be the first to announce that based on clear wording of the statute, there is no in-custody requirement. All right. Thank you, counsel. Thank you to both counsel for your helpful arguments. The case just argued is submitted for decision by the court. The next case, Vargas Moreno.
judges: RAWLINSON, CALLAHAN, Block